# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | |
|---|---|
| **GARY D. STACY,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:08CV00034 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Joseph E. Wolfe, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Andrew C. Lynch, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Gary D. Stacy filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability benefits pursuant to the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

Stacy filed for disability insurance benefits and supplemental security income in November 2003 alleging disability due to back pain, knee pain, depression, and hypertension. His claims were denied initially and upon reconsideration. At his request, on October 14, 2005, Stacy received a hearing before an administrative law judge ("ALJ"). Following that hearing, the ALJ denied Stacy's claim, and the Social Security Administration Appeals Council ("Appeals Council") denied Stacy's Request for Reconsideration.

Stacy then filed a complaint in this court seeking judicial review of the Commissioner's decision, and both Stacy and the Commissioner moved for summary judgment. On March 26, 2007, the court denied both parties' motions for summary judgment and remanded the case to the Commissioner for further consideration of Stacy's residual function capacity and ability to work, pursuant to "sentence four" of 42 U.S.C.A. § 405(g). *Stacy v. Astrue*, No. 1:06cv00066 (W.D. Va. Mar. 26, 2007) (Williams, J.).

Another administrative hearing was held on September 6, 2007. Once again, the ALJ concluded that Stacy was not disabled. The ALJ's decision became final when the Appeals Council declined jurisdiction of Stacy's appeal on April 30, 2008. On June 30, 2008, Stacy filed another complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Stacy, a former natural gas driller and mine mechanic and welder, claims he became disabled in November 2003 due to pain caused by his back and knees, depression, and hypertension. After the first administrative hearing in this case, the ALJ determined that Stacy suffered from degenerative disease of the spine. Although Stacy could no longer perform the heavy duties of his previous jobs, according to the ALJ, Stacy possessed the residual functional capacity to perform light work, with a sit/stand option every thirty minutes to accommodate back pain, and no ability to engage in complex or detailed tasks. The ALJ posed a hypothetical to the vocational expert ("VE") testifying at the hearing, asking if there were any work in the national economy for a person with Stacy's age and skills, who is able to do light work with an option to sit or stand every thirty minutes to accommodate back pain. The VE mentioned several employment options for a person with those conditions. Relying on this assessment, the ALJ concluded that Stacy was not disabled because he had the residual functional capacity to perform jobs available in the national economy.

However, when the ALJ's decision was first reviewed by the this court, Judge Williams held that the hypothetical was incomplete because it did not include any mental limitations in order to fairly represent Stacy's inability to perform complex tasks. Therefore, the VE's testimony did not constitute substantial evidence upon which the ALJ may rely in determining Stacy's residual functional capacity and ability to work. Thus, the case was "remanded to the ALJ for further consideration of Stacy's residual functional capacity and ability to work." Memorandum Opinion at 26, *Stacy v. Astrue*, No. 1:06cv00066 (W.D. Va. Mar. 26, 2007).[1]

At the second hearing, held on September 6, 2007, Stacy was permitted to present any new evidence that was not considered at the original hearing. He submitted two new exhibits. The first exhibit was a copy of Stacy's medical records from Mountain Home VA Medical Center ("Mountain Home") where he was treated from March 2006 to July 2006. At Mountain Home, Stacy was reported to have hypertension, chronic pain in his lower back and knees, tobacco abuse, gastroesophageal reflux disease ("GERD"), and possible shortness of breath and chronic obstructive pulmonary disease. Lumbar X rays revealed he had levoscoliosis, and on certain vertabrae, mild lateral listhesis, mild retrolishesis, bilateral facet

---

[1] For a detailed recitation of the facts before remand, see Memorandum Opinion, *supra*, at 1-15.

arthropathy, and moderate to severe disc degenerative changes, while X rays of his knees revealed mild degenerative arthritis. Stacy also had symptoms of depression and post-traumatic stress disorder. His urine test in March was positive for cannabinoids and methadone. On May 11, 2006, a treating physician assessed Stacy as suffering from hypertension and degenerative arthritis of lumbar spine and knees. Stacy was not prescribed any narcotics for his pain, however, because his urine test was again positive for cannabinoids, and he was "showing signs of drug seeking behavior." (R. at 379.)

Stacy also submitted, as his second new exhibit, medical records from treatment he received at Stone Mountain Health Services ("Stone Mountain") in July and August 2007. In July, Stacy complained of chronic back and knee pain, depression, insomnia, anxiety, GERD, and mild hand tremors. Blood tests revealed he had high cholesterol and elevated blood sugar. He was prescribed several medications to control these issues, including an anti-depressant. In August, Stacy returned to Stone Mountain complaining of chronic pain in his left hip and peripheral neuropathy, in addition to his previous symptoms. Stacy reported to the physician that the anti-depressant medication he was prescribed in July did help with his mood.

Following the hearing, the ALJ concluded that Stacy now suffered from severe back dysfunction and chronic pain syndrome, instead of degenerative disease of the

spine. But the new impairment did not change the ALJ's determination of Stacy's functional capacity: he found that Stacy could only perform light work with an ability to change from sitting to standing every thirty minutes to accommodate back pain and that Stacy had no ability to engage in complex or detailed tasks.

At the hearing, the ALJ asked VE AnnMarie Cash:

> If we were to find that [Stacy] were generally capable of light work, but would need a sort of a sit/stand arrangement that he could do approximately every 30 minutes, and that he is limited to relatively simple occupations, it would be easy to learn and it would be relatively easy to do so there would be no demands upon him in the form of complex or detailed tasks, does that leave any jobs that such a person could do with his age and occupational work experience?

*Id.* at 425. Cash responded:

> There are some sedentary jobs that a person can stand up in place and those types of jobs would be something like the other production workers, sedentary, in the region which is the states of Virginia and West Virginia, there are 1,891, the [U.S.] economy, 59,840. There are types of jobs like hand packers which are more sedentary, in the region, 345, the [U.S.] economy 13,314. Inspectors that are sedentary, in the region, 423, the [U.S.] economy is 147,884.

*Id.* She added that a portion of available positions for parking lot attendants, cashiers, inspectors/sorters, and protective service providers (i.e., surveillance monitors) would also qualify as sedentary or light work and do not require the employee to carry out detailed or complex tasks. For parking lot attendants, Cash testified that there are 1,339 positions in the region that would qualify with the hypothetical's restrictions

and 44,400 in the national economy. For cashiers, there are approximately 11,000 qualifying positions in the region and 333,000 in the national economy. For inspectors/sorters, there are approximately 1,200 qualifying positions in the region and 5,200 in the national economy.

Consequently, the ALJ denied Stacy's request for benefits, concluding that Stacy was not disabled as defined by the Act because he could perform jobs present in the national economy.

III

The plaintiff bears the burden of proving that he is suffering from a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that

meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Reichenbach v. Heckler*, 808 F.2d 309, 311 (4th Cir. 1985).

In accordance with the Act, I must uphold the ALJ's findings if substantial evidence supports them and they were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to

substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Because this case returns to this court after remand under "sentence four" of 42 U.S.C.A. § 705(g), my review is limited to the issue remanded to the ALJ for further consideration. *See Adkins v. Barnhart*, 351 F. Supp. 2d 505, 507-08 (W.D. Va. 2005). Specifically, the ALJ was to reexamine the issue of Stacy's residual functional capacity and ability to work. Following a hearing after the remand, the ALJ found "that the residual functional capacity set forth in the prior ALJ decision accurately reflects [Stacy's] functional abilities beginning November 7, 2003, [to the present]." (R. at 251.) Therefore, the ALJ again concluded that Stacy was not disabled because he could perform unskilled, light or sedentary work found in positions in the national economy such as parking lot attendants, "light" cashier jobs, inspector/sorters, production workers, hand packers, and inspectors. Stacy claims this decision was not based on substantial evidence. I disagree.

First, Stacy challenges the ALJ's conclusion that Stacy's mental impairments were not severe enough to be disabling. Stacy claims that the ALJ ignored new evidence of depression and instead only relied on the opinions rendered before the first hearing by state psychologists who did not examine the latest medical records. However, the record clearly shows the ALJ considered all the new evidence before

coming to his final determination. In his opinion, the ALJ discussed the new evidence presented, including the depression screening and Stacy's complaints of depression, but then concluded that "[n]othing in the records submitted since the first hearing provides evidence of any mental health diagnosis of a medically determinable impairment." (R. at 249.) The evidence supports this conclusion.

The latest treatment records show that in March 2006, Stacy went to Mountain Home complaining of high blood pressure. During that visit, a nurse performed routine screenings for depression and post-traumatic stress disorder. She concluded that Stacy screened positive for these mental illnesses, but he was never given any diagnosis. Although Stacy did return to Mountain Home for treatment for other ailments, he did not pursue any psychological treatment or medication for the next year. In 2007, Stacy went to Stone Mountain and complained, inter alia, that he was depressed and anxious. He received a prescription for Celexa, an anti-depressant medication, and returned in a month stating his condition had improved.

These complaints of depression are not significantly different than those he reported previously. At the first hearing, state psychologists had already "reported signs and symptoms of withdrawal from social activity, and complaints of depression, but no mental health diagnosis of depression or any prior mental health treatment." *Id.* In the two years between the two administrative hearings, the status and severity

of these symptoms did not change. Thus, the new evidence did not require the ALJ to change his original conclusion. Moreover, the fact that Celexa helped Stacy's mood is further proof that he did not suffer from disabling depression. *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Accordingly, I find that substantial evidence supports the ALJ's determination that Stacy did not suffer from a medically determinable mental impairment.

Stacy's next contention is that the ALJ erroneously determined that the pain Stacy suffered from did not constitute a disabling condition. When a claimant alleges disability due to pain, the ALJ must consider whether objective medical evidence demonstrates a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (emphasis omitted). If medical evidence meets the first requirement, the ALJ must look at the entire record and evaluate the intensity and persistence of the pain, as well as the extent to which it affects a claimant's ability to work. *Id.* at 595.

Importantly, the ALJ did not contend that Stacy suffered from little or no pain, but instead found that Stacy's pain was not so severe as to be disabling. The ALJ indeed found that Stacy suffered from severe back dysfunction and chronic pain syndrome. The chronic pain syndrome is caused by lumbar degenerative disc disease

and according to the ALJ, "does interfere with [Stacy's] ability to concentrate." (R. at 249.) Yet, the ALJ also found that

> [s]evere pain will often result in certain observable manifestations such as loss of weight . . . muscular atrophy . . . muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurologic signs. In the present case, the record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurologic abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any type of work on a sustained basis.

*(Id.* at 250-51.)

Here too, Stacy asserts that in reaching this decision, the ALJ ignored the latest medical evidence Stacy submitted. However, again, the record does not support this argument. The ALJ specifically stated that "[n]one of the evidence submitted since the last hearing reflects the disabling functional limitations alleged by [Stacy]. He uses no assistive device for ambulation, and the records do not document that he has any significant problem moving around, climbing stairs, dressing, or performing household chores." (*Id.* at 251.)

Also, the new evidence of pain presented at the second hearing was not markedly different from that presented at the first hearing. Stacy's chief complaints were again pain in the lower back and knees. Although doctors at Mountain Home diagnosed Stacy with some different ailments in his back and knees than others had

previously, none of the newly diagnosed ailments were more severe or more likely to cause significant pain than his previously diagnosed disorders.

Although Stacy testified that the pain was completely disabling, the ALJ found Stacy's "testimony and subjective complaints, regarding the severity and limiting effect of his pain and other symptoms, are not fully credible." (*Id.*) Because the ALJ is able to observe the demeanor of a claimant during testimony regarding the severity of pain and symptoms, his credibility findings are entitled to great weight. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). Courts will ordinarily only reject the ALJ's credibility findings if they "are based on improper or irrational criteria." *Breeden v. Weinberger*, 493 F.2d 1002, 1010 (4th Cir. 1974). There is no allegation in the instant motion that the ALJ's credibility determination was based on illegitimate factors.[2] Therefore, this court has no basis to reject the credibility findings.

Thus, substantial evidence supports the ALJ's conclusion that although Stacy may experience significant pain, it is not debilitating to the point of disability.

---

[2] In his previous motion for summary judgment (prior to remand), Stacy accused the ALJ of impermissibly basing the credibility finding on Stacy's inability to pay for treatment. Judge Williams, however, considered and rejected this argument. Memorandum Opinion, *supra*, at 22-23.

## IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: February 8, 2010

/S/ JAMES P. JONES
Chief United States District Judge